THE STATE EX REL. COLLIVER, APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Colliver v. Indus.
Comm.* (1999), 84 Ohio St.3d 476.]

(No. 95–1792—Submitted October 27, 1998—Decided February 17, 1999.)

*Casper & Casper, Arthur B. Casper* and *Margaret H. McCollum,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Cheryl J. Nester,* Assistant Attorney General, for appellee Industrial Commission of Ohio.

*Dunlevey, Mahan & Furry, Gary W. Auman, William H. Barney III, William P. Allen* and *D. Patrick Kasson,* for appellee Armco Steel Company, L.P.

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy,* urging reversal for *amicus curiae,* Ohio Academy of Trial Lawyers.

*Vorys, Sater, Seymour & Pease, Robert A. Minor* and *Robin R. Obetz,* urging affirmance for *amici curiae,* Ohio Manufacturers' Association and Ohio Self–Insurers' Association.

---

LUNDBERG STRATTON, J. The issue before this court is whether the commission abused its discretion when it denied claimant's application for an additional award for a VSSR. For the following reasons, we determine that the commission did not abuse its discretion. We affirm the judgment of the court of appeals and deny the claimant's request for a writ of mandamus.

The commission has exclusive authority to "hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or

safety of employees * * *." Section 35, Article II, Ohio Constitution. The findings of the commission are subject to correction by an action in mandamus only upon a showing of abuse of discretion. *State ex rel. Allerton v. Indus. Comm.* (1982), 69 Ohio St.2d 396, 23 O.O.3d 358, 433 N.E.2d 159.

In most circumstances, a claimant's entitlement to workers' compensation is a substantive right measured by the law in effect at the time of the industrial injury. *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 46, 623 N.E.2d 55, 56. The claimant in this case contends that 1986 safety regulations are applicable to the forklift in question at the time of Colliver's industrial injury in 1989. However, the employer claims that the law in effect at the time the forklift was placed into service governs.

Both the commission and the court of appeals determined that the applicable safety requirements were those in place when the forklift was placed into service in 1968, not the date of injury, relying on *State ex rel. Ohio Mushroom Co. v. Indus. Comm.* (1989), 47 Ohio St.3d 59, 547 N.E.2d 973. In *Ohio Mushroom*, the claimant suffered an industrial injury in 1982 while using a rototiller-like spawning machine that the employer had used since 1972. The claimant asserted violations of safety requirements in effect on the date of injury. The commission granted a VSSR award and the court of appeals affirmed. However, this court reversed and issued the writ, holding that the commission incorrectly applied the safety code section effective at the date of the claimant's injury. The court in *Ohio Mushroom* explained:

"In the case before us, the commission ruled that, based on claimant's 1982 date of injury, Ohio Adm.Code 4121:1–5 applied. Code applicability, however, is controlled by the date the machine in question was placed into service, not by the date of injury." *Id.* at 60, 547 N.E.2d at 974.

In *Ohio Mushroom*, the court implicitly relied on former Ohio Adm.Code 4121:1–5–01(A), which excused workshop or factory employers from compliance with safety requirements for the purpose of a VSSR injury sustained from an "installation or construction" built or contracted for after August 1, 1977, the effective date of the safety code.

Although the court in *Ohio Mushroom* did not specifically declare the spawning machine to be an installation or construction for purposes of Ohio Adm.Code 4121:1–5–01(A), this finding is implicit, since the court grandfathered the machine into compliance with workshop and factory safety regulations that the employer would otherwise have violated. The employer claims that *Ohio Mushroom* is dispositive of this case.

The applicable clause, since amended as of January 1, 1986, provides:

"Installations or constructions built or contracted for prior to the effective date (shown at the end of each rule) of any requirement shall be deemed to comply with the provisions of these requirements if such installations or constructions comply either with the provisions of these requirements or with the provisions of any applicable specific requirement which was in effect at the time contracted for or built."

On the other hand, the claimant contends that *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster* (1986), 22 Ohio St.3d 191, 22 OBR 275, 489 N.E.2d 288, controls. In *Commercial Lovelace,* the claimant was injured on the job in 1978 while driving a forklift truck. He alleged that his employer had violated certain safety requirements in effect on the date of his injury. The commission found the VSSR. The court of appeals denied the employer's petition for a writ of mandamus.

This court in *Commercial Lovelace* affirmed, applying the safety regulations in effect at the time of injury. We refused to limit our review to the regulations in effect when the forklift was contracted for or built. The court stated that the "forklift vehicles of the nature in question do not appear to be trade fixtures within the purview of the phrase 'installations or constructions.'" But more importantly, the court reasoned that, even assuming that forklifts were installations or constructions, the employer was unable to objectively substantiate when the forklift was purchased and placed into service. *Id.* at 194, 22 OBR at 278, 489 N.E.2d at 291.

We find that *Commercial Lovelace* does not definitively decide the issue of whether a vehicle is an "installation" or "construction" within the scope of Ohio Adm.Code 4121:1–5–01(A). The court's remark that "forklift vehicles * * * do not appear to be trade fixtures within the purview of the phrase 'installations or constructions'" constitutes *dicta.* Because the employer was unable to verify or substantiate with any specificity the purchase date of the forklift truck, or when the machine was placed into service, the court did not need to definitively resolve the issue.

In addition, in *Ohio Mushroom,* the court made no explicit finding that the spawning machine was an "installation" or "construction" within the meaning of Ohio Adm.Code 4121:1–5–01(A). Therefore, we find that neither *Ohio Mushroom* nor *Commercial Lovelace* is dispositive of this issue. Both cases involved different machines. They reached opposite conclusions for different reasons. Contrary to Armco's interpretation, *Ohio Mushroom* did not impliedly overrule *Commercial Lovelace.*

Instead, we look to the language of the safety code to see whether the coil tractor, a mobile object, is within the meaning of "installations and constructions" as those terms are used in Ohio Adm.Code 4121:1–5–01(A). If the grandfather

clause does not apply, then the safety regulations in effect when the industrial accident occurred in 1989 are applicable.

The safety code does not define the words "installations" or "constructions." Armco claims that the drafters of the grandfather clause intended "installations" and "constructions" to encompass everything for which the chapter establishes a safety requirement. This would, in effect, grandfather ladders, scaffolds, portable explosive fastening tools, hand tools, and other motorized vehicles and equipment regulated in the Ohio Administrative Code.

Armco's broad interpretation, however, ignores the plain meaning of "installations" and "constructions," words that customarily refer to something that can be installed or affixed to a structure. Vehicles generally are not thought of as having been installed or constructed. In addition, Armco's broad interpretation would provide employers with an exemption for a plethora of old machinery or equipment regardless of the size or cost. This would tacitly reward employers who retain outdated tools and other devices at the expense of employees' safety.

Although the drafters of the grandfather clause likely were sensitive to an employer's practical difficulty or undue hardship, we do not believe that they intended a blanket exemption for all pre-rules fixtures and equipment, including vehicles, equipment, and tools. Accordingly, we hold that a coil tractor is not an installation or construction for the purpose of Ohio Adm.Code 4121:1–5–01(A) and is not subject to the grandfather clause. Consequently, Armco may be held liable for any failure to comply with specific safety requirements in effect in 1989 on the date of Colliver's injury.

With respect to Ohio Adm.Code 4121:1–5–13(F)(1)(g) ("Employees shall not be required to operate any truck that is not equipped with an adequate, properly maintained braking system."), we concur with the commission's interpretation that the focus of the section is to protect the driver or operator, not bystanders or other employees. The commission concluded that the driver, Ronald Carr, an Armco maintenance person, was not, in fact, "operating" the vehicle. Rather, his only purpose was to test the brakes by moving the truck backward and forward. Therefore, the commission did not abuse its discretion in determining that there is no violation of this section.

With respect to Ohio Adm.Code 4121:1–5–13(F)(1)(d) ("Trucks shall not be altered * * * by the elimination of any parts."), there was evidence in the record that the employer's prior removal of the emergency brake did not cause the accident and Colliver's death. Therefore, there is no proximate cause and no violation of this section.

Finally, with respect to Ohio Adm.Code 4121:1–5–13(F)(1)(h) ("Only employees who have been trained and authorized by their employers shall be required to operate a powered industrial truck."), the commission again determined that the

Armco maintenance person was not operating the vehicle but merely testing the brakes. We find that the commission's narrow construction of "operate" was reasonable. Furthermore, Carr was adequately experienced to test the coil tractor and had trained other employees in using coil tractors. Thus, there is some evidence for the commission's determination that Armco did not commit a VSSR by authorizing Carr to test the brakes of the coil tractor.

Therefore, some evidence exists for the commission's findings, and its decision is not an abuse of discretion. *State ex rel. Fiber–Lite Corp. v. Indus. Comm.* (1988), 36 Ohio St.3d 202, 522 N.E.2d 548, syllabus. We affirm the judgment of the court of appeals and deny the claimant's request for a writ of mandamus.

*Judgment affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS, J., dissents.